STERLAND (UNITED STATES v.). See Case No. 16,387.

STERLING (HUMPHREYVILLE COPPER CO. v.). See Case No. 6,872.

## Case No. 13,375.

STERLING et al. v. The JENNIE CUSHMAN.

[2 Cliff. 636.] [1]

Circuit Court, D. Maine. Sept. Term, 1866.

COLLISION—VESSEL AT ANCHOR—HARBOR REGULATIONS—INEVITABLE ACCIDENT.

1. The general rule is, that where a vessel is at anchor in a proper place, with no sails set, and another under sail collides with her and occasions injury to her, the vessel in motion is liable.

2. The harbor regulations of the harbor of Bangor require that no vessel shall come to anchor in the channel within certain limits; in this case it was found that the libellant's vessel was anchored in a proper place, had the proper light, and that her owners were entitled to recover of the respondents, in accordance with the decree of the district court which was affirmed.

3. Inevitable accident in collision cases is never admitted as a defence, except when it is shown that neither vessel was in fault.

[Appeal from the district court of the United States for the district of Maine.]

Admiralty appeal in a cause of collision. [William Sterling and others] the owners of the brig William Nickels exhibited their libel in the court below, against the brig Jennie Cushman [William H. Lewis, claimant], in a cause of collision, civil and maritime. The place of the collision was in the Penobscot river between Bangor bridge and the north line of the town of Hampden. The libellants' brig arrived at Bangor during the night of September 7, 1865, with a load of white-oak timber, and anchored on the eastern side of the river, nearly opposite Tewksbury's Shipyard. The next day, at the request of the stevedore, she weighed anchor and dropped down the river about one hundred and fifty feet, where she again came to anchor for the purpose of discharging cargo. The stevedore stated that in changing her place of anchorage she was put in shore on

[1] [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

the eastern side of the channel. The cargo was consigned to John T. Tewksbury, the owner of the wharf of that name on the Brewer side of the river; and he confirmed the statement of the stevedore that the vessel did not lie more than one third the way across the river from the Brewer shore. She drew, when loaded, twelve feet of water, and at low tide there was not more than seven feet of water where she lay. Unloading was continued through two days, during which the brig did not change her position. The Jennie Cushman came up the river on the night of the second day during which the brig was unloading. When three miles below Bangor a steam-tug was employed to tow her into the harbor, and in coming in she struck the vessel of the libellants and caused the damage complained of. None of the ship's company of the respondents' vessel were on board at the time of the collision except the master and two seamen, and they were below. At about nine o'clock in the evening, they set a light in the starboard rigging, ten or twelve feet above the deck, and the light burned brightly. The collision occurred between eleven and twelve o'clock at night; but it was a bright night, and the vessels had been in plain view of each other for a half-hour before it took place.

James S. Rowe, for libellants.

Charles P. Stetson and Shepley & Strout, for respondents.

CLIFFORD, Circuit Justice. Taken as a whole, the circumstances show to a demonstration that this was a case of fault and not of inevitable accident. Inevitable accident is never admitted as a good defence except when it appears that neither vessel was in fault, because if the vessel of the respondent was in fault, the libellant is entitled to recover, and if the vessel of the libellant is in fault then the libel should be dismissed; but if both were in fault, then the damages should be divided. The Pennsylvania, 24 How. [65 U. S.] 313; The James Gray, 21 How. [62 U. S.] 194. The general rule is, that when a ship is at anchor in a proper place or anchoring, and with no sails set, if another ship under sail collides with her and does her damage, the vessel in motion is liable. The Batavier, 2 W. Rob. Adm. 407; The Scioto [Case No. 12,508]; Strout v. Foster, 1 How. [42 U. S.] 89.

The appellants do not controvert that general rule, but insist that the evidence in the record shows that the case falls within the qualifications which are included in the rule. The harbor regulations of the port of Bangor provide that no vessel, steamboat, or raft shall be allowed to anchor or lie in the main channel of the river between the Bangor bridge and the north line of Hampden, so as to obstruct the free passage of vessels, boats, or rafts up or down the river. The duty of the harbor-master is to board vessels as soon as practicable after their arrival, and to exhibit to the proper officer the regulations of the port, and, if necessary, to direct them where they shall lie. The argument of the appellants is that the vessel of the libellants was not anchored in a place allowed by the harbor regulations, but in a place where she obstructed the free passage of vessels up and down the river. But the harbor-master, and the owner of the wharf to whom the cargo was consigned, testified otherwise, and so do the master and all others on board the damaged vessel. They testify that she was on the Brewer side of the main channel, where at low tide the water was not more than seven feet deep. The witnesses examined by the appellants strongly support their theory, but after a careful examination of the whole evidence I concur with the district judge that their testimony is not sufficient to overcome the facts and circumstances adduced by the libellants. Several other defences were set up by the respondents, but it is sufficient to say that no one of them is sustained by the evidence. Decree affirmed with costs.